Patricia Garner-Russo, SUI JURIS    *HOME – 540 – 337-4587*
710 Augusta Farms Rd    *Cell*
Waynesboro, VA 22980

IN PRORRIA PERSONA
All rights reserved without prejudice

General Complaint for Pro Se Litigants

RECEIVED

2006 JUL 17  P 1:59

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

# IN THE UNITED STATES DISTRICT COURT

# FOR THE ~~NORTHERN~~ *MIDDLE* DISTRICT OF ALABAMA

# ~~MIDDLE~~ *NORTHERN* DIVISION

*KOLE MANGINA – KOLETTE LENTZ – KAMERYN LENTZ – KARL LENTZ – MARY MANGINA LENTZ*

**Patricia Garner-Russo**   *FRANK RUSSO – MARY RUSSO – FRANK J. RUSSO*
*KAREN GARDER – ALLISON RANDAZZO – CAITLIN RANDAZZO*
*EMILY RANDAZZO*

   **Plaintiffs**

**v.**

   **State of Alabama**

   **Department of Health and Human Resources**
   **DHR –** *PAGE WALLEY*

   **Defendant – and to include the following individuals:**
   *DEIRDRE M MARCH – ANITA SCOTT SMITH – ~~ANITA TURNER~~*
   **Lisa Brown – Tenesha Felton – Kim Mashego**

   **Terry Beasley – Sandra L. Johnson – Sandi Gregory**

   **Jason Bonar – Trish Muscolino – Angela Tanveer**

   **Karen Bizanet** *Bazinet* **– Tracy Curry**

**Comes now Patricia Garner-Russo, Sui Juris, citizen of the State of Virginia and Plaintiff in the above entitled action to provide formal notice to all interested parties of the demand made hereby pursuant to the following attachments.**

privileges, allows for compensatory and punitive damages. Vindication is also sought under this code to obtain relief and assure compliance from the Defendant. And although the Plaintiff had retained counsel to protect her Civil Rights, an affidavit refuting the allegations was never entered into the court documents.

This aforementioned Agency has also violated U.S. Code, Title 18, Part 1, Chapter 13, and s. 241, Conspiracy against Rights.

Also under U.S. Code, Title 18, Part 1, Chapter 73, s.1505 has participated in Obstructing proceedings.

That the State (their employees at various levels of authority) was made aware, by numerous communications of the ongoing concerns and infractions by certain personnel did not effectively resolve these issues:
According to U.S. Code, Title 42, Chapter 62, s.4701, that Congress hereby finds and declares -
"that effective State and local governmental institutions are essential in the maintenance and development of the Federal system in an increasingly complex and interdependent society..... .and are financed in part by Federal funds, a national interest exists...... .that the quality of service at all levels of government can be improved by the development of systems of personnel administration consistent with such merit principles as - i.e. (l)recruiting, selecting,.. ..based on ability, knowledge and skills etc. (3) Training employees to assure high-quality performance. That Federal financial and technical assistance to State and local governments for strengthening their personnel administration in a manner consistent with these principles is in the national interest.

Under the Alabama State General Provisions Code Article 11
–

Sec 6 – 5 – 182                Defamation, libel and Slander

   6 – 5 – 104                Fraudulent deceit

   6 – 5 – 100/103        Right of Action

   6 – 5 – 102                Suppression of material facts

   36 – 25 -17                Reports of violations; cooperation of
                                      Agency heads

False and misleading information was entered about the
Plaintiff into court records on at least 2 separate occasions:
March 12, 2202 and December 8, 2003.  On several occasions
from the 2003 to 2006 derogatory and untrue statements were
made about the Plaintiff and the Plaintiff's family.  These
statements were also made using the U.S. Postal Service.  At
meetings I attended with the above mentioned agency, I was
insulted, humiliated, badgered and harassed.  This unethical and
unprofessional treatment by those in a position of authority
representing the above mentioned agency caused me great
distress, pain – mental, physical and emotional; anguish,
embarrassment and humiliation.  I have taken every opportunity
to cooperate and comply even too the extent of taking so much
time off from work, and eventually losing my employment to
attend frivolous court dates for trials that were never to
commence.  And lastly, to have recognized, that the very agency
whose mandate is to help and reunite families has taken upon
itself to tear a family apart.

In accordance with U.S. Code, Title 42, Chapter 103, subchapter III, s. 9659, part (a) 'any person may commence a civil action on his/her own behalf against any person (including the United States and any other governmental instrumentality or agency, the extent permitted by the eleventh amendment to the Constitution) who is to be in violation of any standard, regulation, condition, requirement, or order, etc.  Also, part (b) (1) states 'any action under subsection (a) (1) of this section shall be brought in the district court for the district in which the alleged violation occurred.

After decades of establishing credibility of character and obeying the laws, rules and statutes of these United States of America and the States in which I have lived – and actively contributing to the betterment of my community – I have been subjected to the misuse of power granted to the Department of Health and Human Resources, DHR, of the State of Alabama.

In violation of U.S. Code, Chapter 18, did in the absence of evidence and without establishing the truth, employees of DHR, (here to fore mentioned), did by using the U.S. Postal System, proceed to maliciously and fraudulently accuse the plaintiff of immoral and criminal activity.  These false accusations caused the Plaintiff undue pain, suffering and humiliation.

In violation of U.S. Code, Title 18, Part 1, Chapter 19,s.371, DHR wantonly and without remorse, also presented to the Court of Judge Storm the same defaming documentation.  This abuse of position was used intentionally and untruthfully to negatively influence the Court against the Plaintiff.

The Defendants have also violated my Civil Rights as stated in U.S. Code 42, Chapter 21.   This code allows for protection of obstruction of justice, intimidating a party, depriving persons of right or

With the knowledge that this situation will never receive a fair hearing presenting all the facts, including a defense for the Plaintiff and the Plaintiff's family, this case will not, as the Plaintiff has been informed, ever be allowed to go to trial and the Plaintiff and the Plaintiff's family will be denied our Civil Rights as provided for in the Constitution, I, the Plaintiff seek the following:

For the injustices mentioned above I seek nothing less than; 1) immediate and unconditional full custody of the Plaintiff's three grandchildren namely, Kole, Kolette and Kameryn Lentz; 2) monetary compensation equal to $10,000,000.00 for each year that the Plaintiff and the Plaintiff's family endured these offenses, in order to undo the harm that was done by the above mentioned agency to the Plaintiff and the Plaintiff's family; 3) a full investigation and disclosure of the practices and procedures of the above mentioned agency and 4) rescinding of all false charges stated and implied about the Plaintiff and the Plaintiff's family.

I, the Plaintiff, thank the Court for reading this statement and await a response.

Signed this day in the year of Our Lord - July 17, 2006


*Patricia Garner Russo*    7-17-06

P.S. While a monetary settlement was requested – we know there is no money amount that can compensate for what has been done to Kole, Kolette and Kameryn the Plaintiff and the Plaintiff's family.

1)

In August of 2001, my son, Karl Lentz, called me from Birmingham, Al. To tell me that I had a GrandSon, Kole. He also informed me that it was possible that Kole had Down's Syndrom. I could hear his concern for his son but became exceedingly alarmed to find out Social Workers had intervened and were refusing to allow Karl and Mary to take Kole home. After speaking to Karl I spent the rest of the evening calling every hospital in Birmingham. I was desparate for any information about Kole.

Within the next few days, I was able to contact *Lisa Brown, DHR Social Worker, for

*ADVISED AND TRAINED BY- DEIRDRE M. MARCH and ANITA SCOTT SMITH

2)

Jefferson County in Birmingham. I explained that my husband and I would love to have Kole live with us. This information was introduced at the Judicial Review on 11-21-01 with Judge Bakakel.

When I first met Kole he was 6 months old. While there was a slight observation of Down's Synkrom, Kole appeared to be strong, healthy and aware. It was heart breaking to leave him and go back home. This visit only made my husband, Frank and I more adamant to bring Kole home.

I believe this visit was allowed to discourage us from wanting Kole. After this visit everything changed.

3)

Whenever I called Lisa Brown, after the February 2002 visit, I was told that she had no obligation to speak to me since a paternity test had not been done. We were at her mercy and whim for any information about Kole. Karl was no longer allowed to visit Kole. When DHR failed to have the paternity test done as ordered by the Court, Karl went to the University Hospital in Birmingham and paid to have his own paternity test done. Repeated requests still failed to have Kole's part of the paternity test done by DHR. Faced with 'contempt of Court' charges, Kole's paternity test was done November 2003, by DHR.

4)

As stated before, Kole was born 8-2001 and paternity testing was not done until 11-2003, causing this family extreme anxiety. I was informed that Kole was infact my grandson, not from DHR or the parents, but from Brian Huff, Karl's attorney, on 1-13-04

After the positive results, Lisa Brown continued to state in Court documents that Karl Lentz was the 'alleged father'. This was done deliberately to deprive the parental family of any right.

Additionally, phone calls were made to Lisa Brown in December 2003 and January 2004 and I was told there were no test results.

During all this time, when I spoke to Lisa

5)

Brown, I was told horrible things about my grandson, Kole. I was told he won't be able to walk; he may be deaf and blind; he will not be able to communicate, virtually a vegetable, retarded! Had she forgotten we had visited with Kole and knew the truth. I was told to walk away and forget all about Kole. I was devastated by these lies. Lisa was trying everything to prevent Kole from being with us. And was to continue.

On December 4, 2003 I was part of a conference call with Lisa Brown, Tenesha Felton and Kim Mashego. During this call I was informed

6)

that the Court date for 12-8-03 was to be continued and nothing of significance would be presented. I also spoke to Brian Huff and was told the same information. The TPR scheduled for this date for Kole was postponed. However, DHR did continue on that day (12-8-03) to file a report, for the record, with Judge Storm. Contained in that report were false allegations 'the Plaintiff observed incidents of abuse (un-named) between Karl + Mary and did 'nothing'. That the Plaintiff was also, allegedly, aware that Mary Mangina was put in a locked car trunk behind the barn and was in fear of her life'. These allegations had been

discussed at an ISP held 11-2003. The Plaintiff was discussing with the social worker, Lisa Brown, the condition of Kole. It appeared to the Plaintiff that Kole had not only failed to gain any weight in a year, but might have actually lost weight. The answer from Lisa Brown to this question was 'you know, Mrs Russo, that Kole is retarded you can't expect him to gain weight (i.e. normal children). On hearing this statement, the attorney for DHR verbally attacked me. In front of at least 12 other people, she began to badger me about the above allegations. I did not understand at first what she was trying to say as my thoughts were on Kole.

8)

When I asked Sandra Johnson to 'please repeat' what she had asked the Plaintiff, she became hostile. I explained that I was not aware of the above mentioned allegations at which point the Plaintiff and her son Karl were insulted and ridiculed in front of all those presents. When Sandra Johnson's harrassment proved not to be successful and the Plaintiff did not condemn and turn on her son – the final blow came when S. Johnson stated 'that Lisa Brown, in fact no one at DHR, was required to answer my questions as paternity had not yet been proven – and I should not even been included in the ISP. While the Plaintiff and

9)

the Plaintiff's family were in shock at this out-
burst, the admission was made by S. Johnson,
Attorney for DHR that they (DHR) were in contempt
of a court order. The ISP at that point fell into
shambles and could not be concluded. The
Plaintiff attempted to approach (the court appointed)
Sandi Gregory, ad Litum, to offer her cooperation, however
the Plaintiff was treated with disdain and ignored,
causing the Plaintiff additional stress while only
trying to achieve the best help for her grandson, Kole
who is a child in need of special services. And as
an employee of the Community Services Board, I had
access to help for all Kole's needs.

10)

ICPC - INTERSTATE HOME STUDY
Plaintiff and Plaintiff's family reside in Virginia

May 2003 — ICPC request sent to Virginia
Although the court was made aware
on 11-21-01 of the Plaintiff's desire for
custody and placement (hearing in the Court
of Judge Bahakel)

Sept 2003 — Home Study completed results were
favorable for the Plaintiff and submitted
to Alabama

Nov. 8, 2004 — All court dates scheduled from 9-2003
thru 11-8-04 were postponed/continued
by DHR (not prepared). The first action
brought before Judge Storm by Lisa
Brown was that the Plaintiff's ICPC
had expired the month before and although
she had to admit "favorable", was
expired. The Plaintiff's attorney, Jason
Bonar, requested an extension as the
expiration was so resent, was denied.
The Judge ordered a 2nd ICPC

April 2005 — DHR Social Worker finally sends 2nd ICPC request
ordered on 11-8-04 to Virginia

11)

ICPC Continued —

June 2005 - Virginia Social Services recieves 2nd
ICPC request from Alabama DHR

July 2005 - ICPC Paper work and interviews completed

August 2005 - Virginia D.S.S. requests clarifications
from Jefferson County DHR. Information
sent to Virginia DSS. was confusing and
inconsistant. Request not responded to.

Feb 2006 - Jefferson County responds to Virginia DSS and
in turn has additional requests.

April 2006 - Home Study ICPC Completed and sent to DHR

June 2006 - ICR received in Jefferson County - internal review
of ICPC with the exception of Mary Kay Laumer

June 2006 - TPR scheduled for 7-17-06
July 2006    TPR rescheduled for 7-19-06 - Mary Margina Lentz
told by Social Worker "this case will never go to trial"

Although this statement is being written on 7-17-06
the TPR will be postponed till 8-9-06

TPR for 8-9-06 will be postponed - no date given.

12)

On March 12, 2002, DHR social worker of Jefferson County Lisa Brown and her supervisor Kim Maskego presented to the Court of Judge Bahakel a report in which contained, on page 2, a libelous statement about the Plaintiff. The Plaintiff was accused of "abusing drugs and alcohol." These inflamatory, defamating libelous statements was intended to make the Court prejudiced against the Plaintiff and deemed unsuitable to care for her grandchildren. Not only would the Court look unfavorably upon the Plaintiff but to all who read the above libelous statements contained in these reports.

13)

The Plaintiff and the Plaintiff's family had no knowledge of these reports and therefore had not opportunity to respond or contest these statements. The Plaintiff and the Plaintiff's family had requested copies of ISP's, Court reports, medical histories for the children in question but we were told by our attorney and DHR that we were not allowed access to these documents.

We came by these reports accidentally in 2003. During 2003 the Plaintiff was communicating with DHR workers until the present time over the issues of defamation of character through libel and slander, and of the refusal of DHR workers

14)

to work with the Paternal Family as mandated by the Contract set forth by the State of Alabama, and required by the Federal government, as a recipient of federal funding.

These complaints were made to the following:

Lisa Brown DHR          Angela Tanveer DHR
Tenesha Felton DHR      Tracy Curry DHR
Terry Beasley DHR       Karen Bazinet DHR

Brian Huff, Attny        Beth Schaffer DHR
Jason Bonar, Attny       Dr. Page Walley DHR
Allen Somers, Jr Attny   Bob Riley, Gov.

Jason Bonar Attny for not advising the Plaintiff of her rights and filing an objection to the false statements.

15)

The focus of this suit pertains to my grandson Kole, and DHR's apparent inability and knowledge of caring for a child with Down's Syndrom, his special needs and expectations. On many occasions this Plaintiff, did in fact, express concerns about Kole's growth and weight, intervention and the lack of said 'professional intervention' on a daily not sporadic schedule. It is this Plaintiff's opinion that her grandson, Kole, was deliberately 'held back' - based on a conversation between Lisa Brown and a doctor who was asked to over state Kole's handicap in order to get additional funding.

16)

In communications with Beth Schaffer, DHR Montgomery, Al the enormity of my concerns were understood and, on 2 separate occasions, the Plaintiff was told an investigation on Jefferson County would be done and I would receive information as to the out-come, findings. After making inquiries and offering to participate, both times, no information was received from Montgomery DHR. This Plaintiff asks the Court "why the findings of these 2 reports were not disclosed"? When medical issues are of concern as in "The R.C. Settlement of 1991" the Plaintiff and the Plaintiffs family have a "right to know."

17)

The Plaintiff also has 2 granddaughters by Karl Lenty and Mary Mangina - Lenty who are also in DHR custody.

Kolette - was born in Virginia  9-28-02 when Mary & Kolette return to Alabama for a visit Kolette was immediately taken away. She is now receiving psychological counseling - Plaintiff states again ruling in the 'R.C. settlement of 1991

Kameryn - born 2-10-04 removed from her mother's arm at 2 days old in the hospital - and again testing and medical provisions were made, as stated above - in violation of the 'R.C. Settlement of 1991'

Kole, Kolette and Kameryn were all included in the Plaintiff's both ICPC requests.

18)

This Plaintiff wants the <u>immediate</u> release of all 3 of the above named grand-children into her unrestricted and unconditional custody:

— There are no charges against the Plaintiff or the Plaintiff's family — including the father of the children, Karl Lenty.

— Absence of a Safety Plan from 2001

— Mishandling of this case by DHR

— Violations forthwith stated and as follows

— ~~Falsify~~ Falsification of Court records.

— Violations of the 'R.C. Settlement of 1991'

— The parents Karl and Mary were never

19)

allowed to live with their parents in
the State of Alabama - not even for 1 day -
- The failure of DHR to act according to
it's mandate set forth by State and
federal governments.

20)

The Plaintiff, as stated above,
Patricia Garner-Russo, thanks
the Court for it's consideration
in this matter and awaits a reply.



Patricia Garner-Russo

signed this day in the Year of Our Lord —
7-17-06

Attachments included